557 F.2d 322
 Max HABER, as Executor of the Goods, Chattels and Credits
that were of George Haber, Deceased, and Max
Haber, Individually, Plaintiff-Appellant,
v.
The COUNTY OF NASSAU and Robert Sehlmeyer, Defendants-Appellees.
 No. 1022, Docket No. 76-7493.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1977.
Decided June 1, 1977.
 
 Joseph P. Napoli, New York City (Schneider, Kleinick & Weitz, New York City, of counsel), for plaintiff-appellant.
 Thomas R. Newman, New York City (John Gardner, Benjamin Vinar and Bower & Gardner, New York City, of counsel), for defendants-appellees.
 Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff's decedent, George Haber, age 21, went on an LSD and marijuana hallucinatory "trip" during a rock concert at the Nassau Coliseum. In his drugged state, he left the concert and then tried to push his way back into the concert without a ticket; he lay on his stomach at one of the entrances, looking at passers-by, and grabbed one young girl by the buttocks and another by the arm. Haber's actions were called to the attention of the defendant, Nassau County police sergeant Robert Sehlmeyer. He tried to question Haber, who refused to stop, and wrestled with the police officer. Haber broke loose and attempted to get away in Sehlmeyer's police car. As the altercation continued, Sehlmeyer drew his gun, which went off. A second shot struck Haber in the heart, killing him instantly. On the defendant's version, the gun went off during the struggle while the decedent was trying to seize the gun. Other witnesses testified, however, that Sehlmeyer fired the weapon at Haber only after taking a step away from him.
 
 
 2
 Plaintiff's father, as executor, and on his own behalf, filed a suit for damages in the Eastern District of New York. He alleged that Officer Sehlmeyer violated the civil rights law, 42 U.S.C. § 1983, and also brought a pendent state law claim charging that Officer Sehlmeyer, acting "without justification, and with reckless, wanton and willful disregard for the rights of the decedent George Haber did shoot and kill" him, that "Sehlmeyer used excessive force, with malice," and "did shoot to kill and did kill, without provocation or just cause, the decedent George Haber."
 
 
 3
 The County of Nassau was named as a co-defendant on the civil rights claim and as a sole defendant on a separate state law claim alleging that the County should have ascertained that Sehlmeyer had vicious tendencies and was not a proper person to entrust with a service revolver. The District Court (Platt, J.) dismissed the civil rights claim against the County on the proper ground that it is not a "person" who can be sued under § 1983. The District Court nevertheless retained jurisdiction over the County on a pendent jurisdiction theory, and a so-called "negligence" claim against the County ultimately was submitted to the jury. Thereafter, the Supreme Court in Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) held that pendent jurisdiction was not available to adjudicate state law claims against a County over which federal jurisdiction was otherwise non-existent.
 
 
 4
 The jury returned a verdict in favor of Officer Sehlmeyer on the civil rights claim, but found both Sehlmeyer and the County liable under the state-law claim, and assessed damages at $100,000 for wrongful death plus $25,000 for pain and suffering.
 
 
 5
 The District Court properly set aside the verdict against the County on the ground that it was "without the statutory jurisdiction" of the court under Aldinger v. Howard, supra.
 
 
 6
 With respect to the verdict against Officer Sehlmeyer, the District Court granted judgment notwithstanding the verdict "on the ground that the proof as to George Haber's contributory negligence being a proximate cause of the accident herein, was overwhelming and essentially uncontradicted, and that it barred plaintiff from any recovery herein." It noted that "the jury's contrary conclusion . . . shocked the conscience of this Court."
 
 
 7
 The District Court also ordered a new trial in the event that its judgment notwithstanding the verdict was reversed. The court reasoned that it would be unfair to let the verdict stand against the individual defendant alone when it is discovered after the verdict that jurisdiction never existed "against the corporate employer" joined as a co-defendant.
 
 
 8
 We disagree with the decision to set aside the verdict, and we reverse the judgment dismissing the complaint. However, we affirm the order of the District Court ordering a new trial.
 
 
 9
 We shall first state briefly the reasons for our disposition of this appeal, and then suggest some guidelines for the new trial.
 
 
 10
 We cannot agree that the voluntary self-inducement of a hallucinatory state spells contributory negligence and constitutes proximate cause in every setting and circumstance. Although it is true that such self-inducement, like alcohol intoxication, is not an excuse for acts committed while under its influence, Rodak v. Fury, 31 A.D.2d 816, 817, 298 N.Y.S.2d 50, 53 (2d Dep't 1969), it is ordinarily for the jury to consider whether it amounted to contributory negligence so as to bar recovery. Id. at 816-17, 298 N.Y.S.2d 50; Clarke v. City of New York, 295 N.Y. 861, 67 N.E.2d 261 (1946); Restatement Second of Torts § 283C(d). This determination is "almost exclusively a jury function," see Wartels v. County Asphalt, Inc., 29 N.Y.2d 372, 379, 328 N.Y.S.2d 410, 278 N.E.2d 627 (1972). And the defense of contributory negligence is not easily asserted in a death case in which the plaintiff is not available to give his own version of events. Rossman v. La Grega, 28 N.Y.2d 300, 307, 321 N.Y.S.2d 588, 270 N.E.2d 313 (1971). Here the plaintiff obtained the verdict of the jury that the decedent's actions had not contributed substantially to the occurrence. It was error for the District Court to reach the contrary result because of a disagreement with the jury verdict.
 
 
 11
 Similarly, we cannot agree that the hallucinatory state into which Haber had consciously entered was, as a matter of law, the proximate cause of his injuries. There was testimony by an eyewitness that "I saw the cop take a step back and fire the gun. And I saw the kid go down." Another bystander testified that the policeman grabbed him by the hair and swung him around; he had a gun in his right hand which he fired and the boy fell to the ground.
 
 
 12
 It is not for us nor for the District Court to supplant the jury in evaluating either credibility or proximate cause in these circumstances. The non-moving party must be given the benefit of all reasonable inferences from the record, Andersen v. Bee Line, 1 N.Y.2d 169, 172, 151 N.Y.S.2d 633, 134 N.E.2d 457 (1956); Bigelow v. Agway, Inc., 506 F.2d 551 (2d Cir. 1974). And the jury could reasonably have found that the use by a police officer of force beyond that necessary for effective subjugation (such as handcuffing), including the use of a deadly weapon aimed at the body, was not proximately caused by the self-induced hallucinatory state.
 
 
 13
 The grant of judgment notwithstanding the verdict therefore must be reversed. The alternative order for a new trial stands on different ground, however. The trial judge has a large discretion in ordering a new trial, as distinguished from his power to enter judgment n. o. v. See Fed.R.Civ.P. 59; 6A Moore's Federal Practice P 59.08(1), (5). A number of considerations favor affirming the exercise of that discretion here. First, we agree with Judge Platt's concern over prejudicial joinder of the County. During the course of its deliberations, the jury had asked whether it could find a verdict "in favor of the plaintiff, but against Nassau County only (and not against the officer)," and the court had answered in the negative. We agree that, in the particular circumstances, there was a likelihood that the jury may have believed, erroneously, that the County would pay the judgment of the police officer, and found Officer Sehlmeyer "individually" liable only for that reason. Judge Platt quite properly analogized the situation to one in which a jury had been instructed erroneously that an individual defendant was covered by an unlimited insurance policy, and that this was a fact which the jury could consider.
 
 
 14
 Second, the verdict was clearly excessive and would have been subject to a remand on remittitur. The jury's award of $100,000 damages for the instantaneous death of a young man with no previous record of earnings and with a history of drug and alcohol abuse was, in our view, excessive.
 
 
 15
 We are somewhat puzzled, moreover, over the mode of trial. The complaint appears to us to charge an intentional tort. Yet the case was apparently tried, aside from the § 1983 claim, as a negligence claim, apparently without objection from either party.[1]
 
 
 16
 Upon retrial it would be better to submit the pendent state claim, as the complaint suggests, on a theory of intentional tort as well as of negligence. On the former claim, contributory negligence would not be a defense. A reckless disregard of the decedent's safety and a wanton use of excessive force would make out a case for liability. For the drunk and the hallucinated remain human beings entitled to protection from wanton disregard of their safety. On the other hand, the emergency may negate wantonness and self-protection may excuse the disregard of another person's safety. These will be issues for the jury.
 
 
 17
 The judgment dismissing the complaint is reversed. The alternative order for a new trial is affirmed with directions.
 
 
 
 [1]
 The charge to the jury, to which there was also no objection, seemingly bridged the two theories. It instructed that if Sehlmeyer used excessive force which ordinarily defeats the defense of self-defense in an intentional tort suit he was presumed negligent as a matter of law